## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF NEW YORK
### CHAMBERS OF THE BANKRUPTCY JUDGE

**HON. STEPHEN D. GERLING**
**CHIEF U.S. BANKRUPTCY JUDGE**

**220 U.S. COURTHOUSE**
**UTICA, NEW YORK 13501**
(315) 793-8111
FAX: 793-8792

David M. Giglio, Esq.
Attorney for Debtor
231 Elizabeth Street
Utica, New York 13501

Maxsen D. Champion, Esq.
Staff Attorney for Chapter 13 Trustee
250 South Clinton Street
Suite 203
Syracuse, NY 13202

Patrick G. Radel, Esq.
Getnick Livingston, Atkinson,
Gigliotti, & Priore LLP
Attorneys for First Pioneer Farm Credit, ACA
258 Genesee Street
Utica, NY 13502

RE: Kenneth E. Barrows
     Case No. 08-61404

## LETTER DECISION AND ORDER

Before the Court is the motion of the Debtor, Kenneth E. Barrows, for an extension of the automatic stay pursuant to § 362(c)(3) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code"). The motion was filed on June 10, 2008, the same day the Debtor filed his voluntary petition pursuant to Chapter 13 of the Code. Opposition to the motion was filed by First Pioneer Farm Credit, ACA ("First Pioneer"), which holds a claim against the Debtor of approximately $331,000, as of the date of Debtor's filing, allegedly secured by a mortgage against real property owned by the Debtor and located on New York State Route 8 in the Town of Bridgewater, New

2

York.[1]

According to Debtor's counsel, Debtor's prior Chapter 13 case failed in March of 2008 because at the time he filed that case in May 2007, "water damage had destroyed his slaughterhouse operations." *See* ¶ 6 of Affirmation of David M. Giglio, Esq., dated June 10, 2008 ("Giglio Affirmation"). Giglio goes on to assert that, "[i]t took approximately ten months for the insurance company to pay the debtor for the damage." *Id.* He also notes that because of the delay, the Debtor was unable to obtain the necessary approval from the U.S. Department of Agriculture ("USDA") to restart his slaughterhouse operations. Thus, Giglio contends that as a result of these setbacks, the Debtor "had a difficult time catching up on missed plan payments as well as his mortgage payments." *Id.*; *see also* Debtor's Affidavit, sworn to June 19, 2008, at ¶ 11 (stating that "[m]y problems making payments prior to April [2008] were due to the fact that the plant was first inoperable and then, when it became operable, waiting for USDA approval. As such the first plan failed").

In its opposition, First Pioneer initially points out that Giglio's Affirmation does not rise to the level of clear and convincing evidence necessary to rebut the statutory presumption of a bad faith filing when a debtor files a second case within the year subsequent to the dismissal of the next prior case. 11 U.S.C. § 362(c)(3)(C). First Pioneer also notes that when one considers the so-called *Galanis* factors, as applied to the instant filing, Debtor's motion should be denied.[2]

---

[1] The Court notes that the instant motion was served only 14 days prior to its return date. Such service fails to comply with Local Rule of Bankruptcy Practice 9013-1(e). The Opposition to the Motion filed by First Pioneer does not raise the issue of timeliness, and, therefore, the Court will consider such an objection to be waived.

[2] *In re Galanis*, 334 B.R. 685 (Bankr. D. Utah 2005).

3

In the Debtor's Affidavit, he affirms Giglio's assertions that at the time he filed the first Chapter 13 case his slaughterhouse operations were shut down due to water damage. He notes that it took many months for his insurance company to pay his claim, that, in fact, the company had initially denied his claim. *See* Debtor's Affidavit at ¶ 7. He asserts that as of March 10, 2008, presumably following the necessary repairs, the slaughterhouse again became operational with USDA approval. *Id.* at ¶ 8. He indicates that since that time his operations have increased weekly to the point that, as of the date of his Affidavit, he had eight full-time employees and was netting approximately $1,500 per week. *Id.* at 9. Debtor also alleges that during the period between the dismissal of his first case and the filing of the instant case, First Pioneer, in partial satisfaction of Debtor's obligation, was paid $60,000 by a third party "who then took ownership of the equipment within the slaughterhouse." *Id.* at 10. Debtor goes on to allege that the transaction, "was done with the consent of First Pioneer." *Id.*

Debtor then offers his own version of how the *Galanis* factors apply in his favor when considering the presumption of bad faith which arose when he filed his second case. Of note, he disputes First Pioneer's assertion that he incurred significant real property tax debt between filings. He notes that his real property taxes approximate only $12,000 per year and, therefore, the delinquency alleged by First Pioneer of $37,924 cannot possibly be accurate.[3] *Id.* at ¶¶ 16-17. He also argues that he is not a "serial filer," having filed only the prior case in 2007 and the instant case.

---

[3] A review of Debtor's Schedule D filed in the current case does indicate the Debtor owes real property taxes to the County of Oneida and the Town of Bridgewater, New York, totaling $37,924 though no time period is referenced. A proof of claim was filed on behalf of Oneida County in the amount of $26,164 as secured on June 20, 2008. The Court also notes that in his prior case, filed in May 2007, Debtor did not list any delinquent real property taxes. It, therefore, would be reasonable to assume that the real property taxes admitted to in the instant case accrued sometime between May of 2007 and June of 2008.

4

First Pioneer asserts that during Debtor's first case, he made only two payments to the Chapter 13 Trustee, and that he made only four adequate protection payments of $3,000 per month to it, pursuant to a Court-approved stipulation. It contends that two of those adequate protection payments came from insurance proceeds. First Pioneer reminds the Court that upon the filing of the second case, Code § 362(c)(3)(C) imposes a rebuttable presumption of bad faith, which can only be overcome by "clear and convincing" evidence.

As indicated, First Pioneer presents its version of the *Galanis* factors, as applied to the facts of these two cases, concluding, of course, that the bad faith presumption has not been rebutted. One point First Pioneer appears to rely heavily on is the Debtor's performance in the prior case. In addition to the limited number of payments made, it asserts that Debtor made no attempt to comply with the Conditional Order entered by the Court on March 3, 2008, which required a payment of $890 by March 20, 2008.[4]

The Court is somewhat concerned in the instant case with Debtor's income and expenses, as reflected in his Schedules I and J. In Schedule I, filed with his Petition on June 10, 2008, he states that his "Average Monthly Income" is $4,000, with expenses reflected on Schedule J as being $4,640, for a monthly net of negative $640. Nevertheless, on the same date he filed his current Petition, he filed a proposed Chapter 13 Plan reflecting a monthly payment to the Trustee of $1,310. On June 19, 2008, Debtor filed Amended Schedules I and J. In Amended Schedule I, he indicates

---

[4] While certainly not dispositive of the contested matter presently before the Court, at the confirmation hearing held in the Debtor's first case on February 26, 2008, it was the Trustee who urged that the Court enter a conditional order of dismissal based on the Debtor's nonpayment. First Pioneer's counsel indicated at that hearing that his "marching orders being that if the Debtor continues to make some progress we are not going to object to another adjournment" of the confirmation hearing. *See* Record of Confirmation Hearing, February 26, 2008, at 2:14-2:16 p.m.

that his Average Monthly Income is $7,600, with expenses reflected on Schedule J as $6,290, to arrive at the net of $1,310. There does not appear to be any explanation for the significant increase in both income and expenses between June 10th and June 19th. In addition, in the Giglio Affirmation, he asserts that the Debtor's slaughterhouse operation is "grossing approximately $8000.00 per week." In Debtor's Affidavit, sworn to just nine days after the date of Giglio's Affirmation, he indicates that the slaughterhouse operation is, "currently grossing $10,000.00" per week with weekly net of "approximately $1500.00 per week." While the numbers appear to be akin to shifting sands, they may well be the result of the actual re-start of the slaughterhouse operations this past spring.

While this Court has embraced the *Galanis* factors "as somewhat of a beacon in an otherwise turbulent sea," in dealing with Code § 362(c)(3) stay extension motions, *see In re Marcello*, 2008 WL 821542 (Bankr. N.D.N.Y. Mar.27,2008), the real conclusion a bankruptcy court must reach is whether or not the debtor's subsequent filing is made in good faith, such that the presumption of bad faith is rebutted. *See In re Carr*, 344 B.R. 776, 780 (Bankr. N.D. W.Va. 2006). In order to reach that conclusion, some factual analysis must be employed, whether in strict adherence to *Galanis* or a well-reasoned variation thereof as employed by Bankruptcy Judge Patrick M. Flatley in *Carr*.

The first factor considered in *Carr* was whether there was a reasonable probability of success. *Id.* at 781. "[A]t a minimum, the debtor [should] have sufficient income after expenses to fund the debtor's proposed plan and that no other impediment exists that will require the dismissal of the case." *Id.* In the prior case, the Debtor was confronted with not only the flood damage to the slaughterhouse, but also the delay in receipt of the insurance proceeds to make the necessary repairs required prior to approval of the USDA. Those repairs have been made and the approval granted.

6

Based on the Debtor's representations, it is anticipated that his income should be more than sufficient to cover his expenses while leaving sufficient monies to make the plan payments.

The second factor addressed in *Carr* was the reason for the dismissal of the prior case. Of particular concern to the court was whether the dismissal was due to circumstances beyond the debtor's control or whether it was due to attempts on the part of the debtor to manipulate the bankruptcy system. *Id.* In this case, there have been no allegations that the Debtor attempted in the prior case to manipulate the bankruptcy system by engaging in any bad conduct. Instead, the Debtor was confronted with having to shut down his slaughterhouse operations on January 27, 2007, as a result of water damage to the facility.

The court in *Carr* indicated that "the debtor needs to offer some reasonable assurance that whatever caused the dismissal of the prior case will not repeat in the current case." *Id.* Certainly, it is not reasonable to expect the Debtor to offer assurances that there will be no further water damage to the facility. However, under the circumstances, it certainly appears highly unlikely.

With respect to the fourth factor and whether First Pioneer has suffered any untoward prejudice between the dismissal of the prior case and the filing of the current case, the Court notes that less than two and a half months elapsed between the dismissal of the prior case and the filing of the current Petition. Within the month following the dismissal, namely April 2008, First Pioneer was paid $60,000 by the new owner of the equipment utilized by the Debtor in his operations.

First Pioneer alleges that the Debtor has failed to pay real property taxes over the thirteen months since his prior filing. According to Schedule D, the Debtor owes $26,164 in unpaid real estate taxes to the Oneida County Commissioner of Finance and $11,760 to the Town of Bridgewater, both of which Debtor lists as secured claims. The fact that the Debtor contends that

7

real property taxes total approximately $12,000 on an annual basis does not negate the prejudice to First Pioneer given that any such unpaid taxes prime its mortgage.

With respect to the fifth factor, the Court must give consideration to how the debts arose and what was the Debtor's motivation for filing. *Id.* It has not been suggested that the Debtor's obligations arose as the result of a lavish lifestyle or as the result of fraud, misconduct or gross negligence on his part. Nor is there any assertion that the Debtor has concealed or misrepresented his assets and/or sources of income.

The sixth factor cited by *Carr* is the lack of any objection from the trustee or creditor to the debtor's request for an extension of the automatic stay. In this case, First Pioneer has objected to the relief sought by the Debtor.

A determination of good faith is within the Court's discretion. *Id.* at 782. The prior case was dismissed apparently through no fault of the Debtor when the slaughterhouse operations ceased and he no longer had any income. There was a delay in receiving insurance proceeds and obtaining approval of the USDA. The slaughterhouse is now operational and, according to the Debtor, he is grossing approximately $8,000-$10,000 per week after approximately four months. First Pioneer was paid $60,000 in April 2008, a month after operations recommenced. Based on the above factors, the Court finds that the equities weigh in favor of the Debtor. The presumption that the current case was filed in bad faith has been rebutted by the Debtor's clear and convincing evidence to the Court's satisfaction. The Court believes that the Debtor should be given an opportunity to propose a Chapter 13 plan. Accordingly, the Court will grant the Debtor's motion for an extension of the automatic stay pursuant to Code § 362(c)(3), subject to certain terms and conditions. *See Marcello*, 2008 WL 821542 at *3. The Court will require the Debtor to make his regular

8

postpetition mortgage payment to First Pioneer, beginning with the payment coming due in August 2008 in accordance with the terms of the mortgage and to continue to make the regular monthly mortgage payment in a timely fashion, as provided for in the mortgage, for the following six months. In the event that the Debtor fails to make any of the mortgage payments on a timely basis within the six month period, First Pioneer may obtain relief from the stay by filing an affidavit of default and proposed order with the Court without any further notice to the Debtor or his attorney. Thereafter, in the event of Debtor's default in making any ongoing monthly mortgage payments, First Pioneer will have to file a motion for stay relief pursuant to Code § 362(d). To facilitate payment in accordance with this Order, First Pioneer shall file with the Court and serve upon the Debtor's attorney and the Debtor, a statement of the regular monthly mortgage payment and the address to which the payment should be sent. Said statement shall be filed and served within ten business days of the date of this Order

IT IS SO ORDERED.

Dated at Utica, New York

this 9th day of July, 2008

s/s Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge